UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

Case No. 8:21-cv-1311-CEH-JSS

$144,590.00 in United States Currency,
Two Audemars Piguet Watches,
Two Gold Chains,
A Glock 19 Gen4 handgun,
A Smith & Wesson M&P15 semi-automatic rifle, and
Two Mini Draco AK-style pistols

     Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon

information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1.    This is a civil action *in rem* to forfeit to the United States of America,

pursuant to 21 U.S.C. § 881(a)(6) and (11), the following assets seized on October 27,

2020 from brothers Jairo and Luis Arroyo:

      a.  Approximately $144,590.00 in United States Currency;

      b.  Two Audemars Piguet Watches;[1]

      c.  Two Gold Chains,

---

[1] Audemars Piguet Holding SA is a Swiss manufacturer of luxury mechanical watches and clocks.



    d.  A Glock 19 Gen4 handgun;

    e.  A Smith & Wesson M&P15 semi-automatic rifle; and

    f.  Two Mini Draco AK-style pistols.

(the Defendant Assets).

## JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

3.    This Court has *in rem* jurisdiction over the Defendant Assets because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.    Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the Defendant Assets were found and seized in this district.

## THE DEFENDANT *IN REM*

5.    The Defendant Assets consist of approximately $144,590.00 in United States Currency, two Audemars Piguet Watches, two Gold Chains, a Glock 19 Gen4 handgun, a Smith & Wesson M&P15 semi-automatic rifle, and two Mini Draco AK-style pistols seized by law enforcement on October 27, 2020 in Hillsborough County, Florida.

6.    Law enforcement officers determined that there was probable cause to believe that the currency, watches, and gold chains constituted: (1) money furnished

or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

7.      Law enforcement officers determined that there was probable cause to believe that the firearms were used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such controlled substances.

8.      The Drug Enforcement Administration (DEA) took custody of the currency and jewelry, and those assets remain in the custody of the United States. The Tampa Police Department took custody of the firearms and is maintaining custody of them for the United States. As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Assets if they are in the government's possession, custody, or control.

### BASIS FOR FORFEITURE

9.      The currency, watches, and gold chains are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

10.     The firearms are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(11) because they were used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to controlled substances.

## FACTS

11.     The facts and circumstances supporting the forfeiture of the Defendant Assets have been provided by DEA Special Agent Brian J. Steele who states as follows.

### Traffic Stop and Seizure of Currency

12.     On October 27, 2020, DEA and local law enforcement agents were conducting surveillance on Jairo Enquire Arroyo and Luis Henry Arroyo at 2341 West Union Street in Tampa. At the time, Jairo Enquire Arroyo was 27 years old and Luis Henry Arroyo was 28. The home at the address is a 2-bedroom, 1-bathroom residence where the Arroyo brothers lived. The dwelling is shown below.

 

13.     Shortly after noon on that day, law enforcement officers observed Jairo Arroyo exit the residence carrying a large cardboard box which he placed in the trunk of a Dodge Charger Hellcat before climbing into the driver's seat. The vehicle was registered to Luis Arroyo who also exited the residence before entering the front passenger seat of the vehicle. At about 12:11 p.m., the two men left in the vehicle. Law enforcement officers in unmarked vehicles followed.

14.     The Arroyo brothers traveled to a FedEx office—which Jairo Arroyo entered. The two men then went to an office park—where Jairo Arroyo entered a building.

15.     At around 12:46 p.m., local law enforcement agents stopped the Dodge for a window tint violation. Immediately upon approaching the vehicle, the agents smelled marijuana. For that reason, the agents searched the vehicle.

16.     In the trunk of the vehicle agents found a sealed brown cardboard box which contained $144,590.00 in United States Currency. The currency was vacuum packed in five sealed plastic bundles. *See* below.

  

17.     The Arroyo brothers were transporting the currency in a manner that is inconsistent with the way legitimate individuals or businesses operate. Legitimate individuals and businesses do not transport large quantities of cash in this fashion since there are better, safer means to move money. The illegal drug trade is a cash business. Drug traffickers do not accept personal checks or credit cards. The way in which the money was packaged was consistent with how drug traffickers transport currency. Those who deal in drug-tainted money cannot avail themselves of banks, because large deposits and suspicious activity would generate Currency Transaction Reports and/or Suspicious Activity Reports.[2]

18.     Both Arroyo brothers denied the currency was theirs. Jairo Arroyo claimed the box belonged to "John Fajardo" and produced a shipping document with the name "John Fajardo" and a contact telephone number. When a law enforcement agent called the number listed for Fajardo from the agents restricted telephone number, a phone located in the Dodge Charger immediately began to ring and showed the incoming call was "restricted."

19.     When questioned about the box and currency, Jairo Arroyo claimed that neither the box, nor the currency, belonged to him. He claimed that "John

---

[2] A Currency Transaction Report is a report that U.S. financial institutions are required to file with FinCEN for each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to the financial institution which involves a transaction in currency of more than $10,000. A Suspicious Activity Report is a report financial institutions are required to make about suspicious or potentially suspicious activity.

Fajardo" gave him the box earlier that day and asked him to deliver the box to a person from Malca-Amit—who he was to meet in a nearby parking lot.[3]

20.     When questioned about the box and currency, Luis Arroyo also denied owning the box or its contents. Luis Arroyo claimed to reside at 2341 West Union Street in Tampa.

21.     Law enforcement agents seized the currency, issued Jairo Arroyo a traffic citation, and headed to 2341 West Union Street to continue their investigation.

### Search of 2341 West Union Street

22.     Later that afternoon, law enforcement agents traveled to 2341 West Union Street to continue their investigation. After arriving, they observed Ichmael Nieves—a cousin of the Arroyo brothers—throw a box over a fence in the rear of the property. The box was later recovered and found to contain a Century Arms Mini Draco AK-style pistol and jewelry.   *See* below.

---

[3] According to its website, "Malca-Amit provides the luxury goods industry, high-net worth individuals and international banks with a global team of experts, including logistics, security, customs house and special operations professionals."





23.    The jewelry consisted of two Audemars Piguet Watches and two gold chains. Each of the watches has been appraised for over $35,000 and the less expensive of the two is an 18K rose gold watch containing approximately 12.75 carats of diamonds. Each of the gold chains has been appraised for over $46,000 and the less expensive of the chains is a 24 inch, 10K rose gold chain with approximately

2,097 diamonds and weighing approximately 31.46 carats. The total weight of this chain is 691.8 grams (approximately 24.3 ounces or a little over 1.5 pounds). In total, the jewelry is valued at over $160,000.

24.    Ichmael Nieves claimed that he threw the box over the fence at the direction of his cousin, Luis Arroyo, who had just called and told him the police were on the way and to get the firearms out of the house since.

25.    Law enforcement agents searched the residence after obtaining consent from the owner. During the search, they found two firearms on the bed of the rear bedroom. One was another Century Arms Mini Draco AK-style pistol and the other was a Smith & Wesson M&P15 semi-automatic rifle. *See* below.



26.    Also in the rear bedroom, agents found capped PVC pipes which can be used to safely bury drugs, currency, or other valuables. *See* below.



27.   In the front bedroom, agents found a Glock 19 Gen4 handgun. *See* below.



28.   In the house, agents also found many items consistent with drug trafficking, including:

a.  scales (used to weigh controlled substances),

b.  a heat sealer (used to package currency and controlled substances),

c.  a money counter,

d.  bubble wrap,

e.  shipping boxes (used to ship currency and controlled substances),

f.  high capacity magazines, and

g.  ammunition.

29.    Firearms are tools of the illegal drug trade since those engaged in trafficking often have valuable drugs and/or large amounts of currency in their possession. This makes drug traffickers targets for robbers and drug traffickers are reluctant to call the police if they are robbed. Rather, they must rely on self-help. Scales, heal sealers, and money counters are also implements of drug traffickers.

30.    As of October 28, 2020 (the day after the Arroyo brothers were stopped and their currency was seized), the Florida Department of Revenue had no wage information for either Jairo Enquire Arroyo or Luis Henry Arroyo. The Department is responsible for registering employers and collecting reemployment tax and wage reports due. The fact that the Department has no wage information on either of the Arroyo brothers strongly suggests they have never been employed in Florida (or if they were employed, their employer failed file required wage reports).

31.    Despite denying ownership of the currency on the day it was seized, each Arroyo brother has filed a sworn claim to the $144,590.00.

32.     In short, (1) the sheer quantity of cash and value of the jewelry, (2) the way the cash was packaged, (3) the possession of firearms, ammunition, scales, a heat sealer, and a money counter, (4) the lack of sufficient legitimate income, (4) the attempt to hide the jewelry and a firearm by throwing them over fence, and (5) the changing claims of ownership, support a finding that the Defendant Assets are connected to a controlled substance violation.

## <u>CONCLUSION</u>

51.     As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the currency, watches, and gold chains constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Likewise, probable cause exists to believe that the firearms are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(11) because they were used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to controlled substances.

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Assets;

that due notice be given to all interested parties to appear and show cause why the

forfeiture should not be decreed; that the Defendant Assets be forfeited to the United

States for disposition according to law; and that the United States have such other

and further relief as this case may require.

Dated: May 28, 2021                    Respectfully Submitted,

                                       KARIN HOPPMAN
                                       Acting United States Attorney

By:    _____
                                       JAMES A. MUENCH
                                       Assistant United States Attorney
                                       Florida Bar Number 472867
                                       400 North Tampa Street, Suite 3200
                                       Tampa, Florida 33602
                                       (813) 274-6000 – telephone
                                       E-mail: james.muench2@usdoj.gov


By:    _____
                                       NICOLE M. ANDREJKO
                                       Assistant United States Attorney
                                       Florida Bar Number 0820601
                                       400 W. Washington St., Ste. 3100
                                       Orlando, Florida 32801
                                       (407) 648-7500 – telephone
                                       (407) 648-7643 – facsimile
                                       E-mail: nicole.andrejko@usdoj.gov

## VERIFICATION

I, Brian J. Steele, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Drug Enforcement Administration, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other DEA Special Agents and Task Force Officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this _17th_ day of May, 2021.

Brian J. Steele, Special Agent
Drug Enforcement Administration

14